UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL
WELFARE, PENSION, ANNUITY AND
APPRENTICESHIP, SKILL
IMPROVEMENT AND SAFETY FUNDS
And THE HIGHWAY, ROAD AND
STREET CONSTRUCTION LABORERS
LOCAL UNION 1010,

       Plaintiffs,

   -against-

GENRUS CORP.,

       Defendant.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
18 CV 4232 (AMD)(CLP)

**POLLAK**, United States Magistrate Judge:

On July 26, 2018, plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds and the Highway, Road and Street Construction Laborers Local Union 1010 ("Trustees" or "plaintiffs") commenced this action against Genrus Corp. ("Genrus" or "defendant"), under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145; Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, seeking to collect delinquent employer contributions owed to a group of employee benefit plans. (Compl.[1] ¶ 1).

---

[1] Citations to "Compl." refer to the Complaint filed on July 26, 2018.

Despite proper service on the New York Secretary of State on July 27, 2018, defendant Genrus failed to answer or otherwise respond to the Complaint. (Marimon Decl.[2] ¶ 4, Ex. Q). On September 27, 2018, plaintiffs requested a Certificate of Default and on September 28, 2018, the Clerk of Court entered a notation of default. (Id. ¶ 3). Thereafter, on October 31, 2018, plaintiffs filed a motion for default judgment. Plaintiffs' motion was referred to the undersigned to determine liability and damages and to issue a Report and Recommendation. Defendant has failed to submit any paperwork to the Court, despite the Court's Order requesting such paperwork on February 14, 2019.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for default judgment be granted, and that damages be awarded in the amount of **$15,999.28**. Further, the Court respectfully recommends an Order be granted directing defendant to submit to an audit of its books and records from December 1, 2014 through the present.

## FACTUAL BACKGROUND

The Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (collectively, the "Funds") are employer and employee trustees of multi-employer labor-management trust funds organized and operated in accordance with Section 302 of the LMRA. (Compl. ¶ 4). The Funds are established pursuant to a Collective Bargaining Agreement between the Highway, Road and Street Construction Laborers Local Union (the "Union") and defendant Genrus. (Id. ¶¶ 5, 6). The Funds are "employee benefit plans," as defined in Section 3(1) of ERISA. (Id. ¶ 3). The Funds

---

[2] Citations to "Marimon Decl." refer to the Declaration of Nicole Marimon, in Support of Motion for Default Judgment, dated October 31, 2018.

have their principal place of business in Whitestone, N.Y. (Id. ¶ 4). Defendant Genrus is located at 200-31 Linden Boulevard, St. Albans, N.Y. (Id. ¶ 6).

According to the Complaint, the CBA requires Genrus to make monthly contributions to the Funds and pay dues check-offs for every hour of Covered Work on behalf of certain employees within the trade and geographical jurisdiction of the Union. (Id. ¶¶ 8, 9). Under the CBA, Genrus is required to submit periodic reports to the Funds, detailing the number of hours of Covered Work performed, and, when requested, furnish its books and records to the Funds for audit purposes. (Id. ¶ 12). The CBA provides that if an employer fails to pay contributions when due, the Funds may collect interest at an annual rate of 10% on the amount of unpaid interest, liquidated damages, and any attorney's fees required to collect the contributions. (Id. ¶¶ 10, 11). Under the Trust Agreements that are incorporated by reference in the CBA, the Trustees have promulgated a policy that provides that if Genrus fails to make contributions when due, the Funds are entitled to collect interest on the delinquent contributions at an annual rate of 10% and liquidated damages of 10% as well. (Id. ¶¶ 13, 14, 16).

Plaintiffs allege that Genrus failed to pay appropriate contributions and make payments for dues check-offs for Covered Work performed during the periods of March and April 2016, June and July 2016,[3] and October 2017. (Id. ¶ 19). Genrus has also refused to comply with the

---

[3] There is some discrepancy in the Complaint as to the dates alleged; paragraph 19 lists June and July of 2016, while paragraph 34 lists June and July of 2017. (Compare Compl. ¶¶ 19 & 34). A review of the Declaration of Joseph Montelle in Support of Plaintiffs' Motion for Default Judgment, dated October 30, 2018 ("Montelle Decl."), ECF No. 11, and Exhibits L, M, and N attached thereto, suggests that the reference in paragraph 34 to June and July 2017 is a typographical error. In his Declaration, Mr. Mantelle states that Genrus has, "failed to submit contributions to the Funds and dues check-offs and union assessments for work performed in March and April 2016, June and July 2016, and October 2017." (Montele Decl. ¶ 9. See also Ex. N). The calculations summarized in Ex. N further indicates June and July 2016.

3

Funds' request to submit to an audit covering the period December 1, 2014 through the date of the Complaint. (Id. ¶ 20). Plaintiffs seek an award of delinquent contributions, interest, liquidated damages, and attorney's fees and costs. In addition, the Trustees seek an order requiring Genrus to furnish its books and records and submit to an audit to determine if Genrus has complied with its obligation to remit contributions and dues to the Funds and the Union. (Id. ¶ 37). Plaintiffs allege that despite their demand, Genrus has failed to comply with the Funds' efforts to conduct an audit. (Id. ¶ 38).

## DISCUSSION

### I. Default Judgment

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Prior to the district court's grant of default judgment, the Clerk of the Court entered a default because defendant "failed to plead or otherwise defend [against the instant Complaint]." Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). In this case, the Clerk of the Court entered a default against defendant on September 28, 2018, and the motion for default judgment was filed on October 31, 2018.

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard

4

before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, ensuring if at all possible that both parties may have their cases judged on the merits. Id.

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

II. Entry of Default Judgment

The benefit plans operated by plaintiffs fall under the purview of ERISA in that the Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of the employee organization, in accordance with 29 U.S.C. § 1002. ERISA

specifies the types of damages to be awarded when judgments are entered in favor of benefit plans. See 29 U.S.C. § 1132(g)(2). These include the following:

1. the unpaid contributions,
2. interest on the unpaid contributions,
3. an amount equal to the greater of--
    i. interest on the unpaid contributions, or
    ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
4. reasonable attorney's fees and costs of the action, to be paid by the defendant, and
5. such other legal or equitable relief as the court deems appropriate.

Id. Plaintiffs have also alleged a claim under 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

The Complaint asserts that defendant Genrus was required, pursuant to the CBA, to contribute certain amounts to the Funds and to remit deducted dues monies to the Union and failed to do so. (Loscalzo Decl.[4] ¶¶ 10, 12; Exs. F and G; Compl. ¶¶ 8, 9). Plaintiffs further allege that Genrus failed to submit contributions to the Funds, and dues check-offs and Union assessments for work performed during March and April 2016, June and July 2016, and October 2017. (Montelle Decl. ¶ 9; Exs. K-M). Defendant also failed to submit payment for interest

---

[4] References to "Loscalzo Decl." refer to the Declaration of Keith Loscalzo, dated October 31, 2018.

owed on the late payments for contributions owed for March and April 2016, and for June and July 2016. (Montelle Decl. ¶ 10; Exs. K-M). The Complaint also alleges that Genrus refused to submit to an audit of its books and records to determine whether it had made contributions in compliance with the CBA. (Compl. ¶ 38; see also Montelle Decl. ¶ 11). Plaintiffs allege that the failure to meet these obligations warrants relief.

Accordingly, plaintiffs seek to have this Court issue an Order: 1) directing that judgment be entered for the amount of delinquent contributions owed, together with interest; 2) ordering Genrus to comply with the request for an audit; and 3) granting plaintiffs liquidated damages, costs, and attorneys' fees.

Pursuant to Section 515 of ERISA, Genrus is required to make contributions to the Funds in accordance with the terms of the CBA. See 29 U.S.C. § 1145. Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the CBA, plaintiffs have sufficiently alleged a claim that the defendant breached its statutory and contractual obligations under both ERISA and the CBA. See 29 U.S.C. § 1132(g)(2).

Moreover, in this case, it is beyond dispute that defendant is in default since defendant failed to file an answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement). Despite the numerous opportunities afforded defendant, it apparently lacks interest in participating in these proceedings. Furthermore, defendant has also failed to obtain counsel, which constitutes a failure

to defend because defendant, a corporation, cannot proceed pro se in federal court. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given that plaintiffs have duly served all orders and motions on defendant, and defendant has refused to attend any hearing or move in any way whatsoever with respect to the instant case, this Court respectfully recommends that default judgment be granted against defendant. Numerous opportunities have been afforded defendant, and as it apparently lacks interest in participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment.

III. Damage Awards in Default Judgments

Once a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the petition pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). For the purposes of an inquest, a court accepts as true all factual allegations in the petition, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. The plaintiffs still have the burden of proving damages, either by an evidentiary hearing or, should the defendant fail to appear, exhibits submitted by the plaintiffs. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v.

ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988). By Order dated February 14, 2018, the Court directed the parties to submit papers on the question of damages. Defendant neither submitted papers nor asked for any extensions.

A. Contributions and Union Dues

Plaintiffs seek an award of delinquent contributions and unpaid union dues. In the First Claim for Relief, brought under the LMRA, plaintiffs seek to enforce the provision of the CBA requiring the remittance of contributions, alleging that Genrus failed to pay appropriate contributions and make payments for dues check-offs for Covered Work performed during March and April 2016, June and July 2016, and October 2017. (Compl. ¶¶ 24, 26). Specifically, the Complaint alleges that under the CBA, Genrus is liable for contributions and dues check-offs for these months in the amount of $6,855, plus $278.11 in late interest owed. (Id. ¶¶ 24, 25; see also Montelle Decl. ¶ 12, Exs. K, L, M). In the Second Claim for Relief, which is brought pursuant to ERISA, the Complaint alleges that Genrus is liable for contributions to the Funds in the amount of $6,514.52 for the same months of March and April 2016, June and July 2016, and October 2017. (Compl. ¶ 34). According to the Declaration of Joseph Montelle, Administrator of the Funds, the difference between the two amounts is based upon the dues check-offs that are owed; "Genrus owes fringe benefit contributions. . . in the amount of $6,514.52," and "dues check-offs and union assessments in the amount of $591.64." (Montelle Decl. ¶ 12).

Accordingly, having reviewed the various exhibits attached to the motion for default judgment, the Court respectfully recommends that plaintiffs be awarded $6,855 in unpaid contributions and union dues.

B. Interest and Liquidated Damages

Under the CBA, Genrus is liable to the Funds for interest on the amount of the unpaid contributions at an annual rate of 10%, calculated from the date the contributions were due. (Montelle Decl. ¶¶ 6, 7, Ex. J, Article II). Based on the remittance reports submitted by Genrus for the months of March and April 2016, and June and July 2016, Genrus failed to submit payments for interest owed on the late payments for these months, amounting to $278.11. (Id. ¶ 12, Ex. K).

In addition, interest has continued to accumulate since the date that each contribution was owed. According to the Montelle calculations, simple interest at the rate of 10% per annum up to October 31, 2018, the date of the Montelle Declaration, amounted to $1,371.35.[5] (Id. ¶ 13, Ex. N). Since October 31, 2018, interest has continued to accumulate on these unpaid delinquent contributions. At the rate of 10% per annum, this amounts to an additional $551.80.[6] All told, Genrus is liable to the Funds for interest payments totaling $1,923.15 since the date that each contribution was owed.

Apart from interest due and owing on the delinquent contributions, Genrus is required to pay liquidated damages calculated at the rate of 10% of the delinquency. (Id. ¶ 7, Ex. J, Article

---

[5] The Court notes that there is a $0.17 difference between the amount of interest set forth in the Montelle Declaration and Exhibit N thereto. In recommending an award of damages, the Court is using the figures set out in the Declaration.
[6] The Court calculates simple interest at a rate of 10% annually on the $6,514.52 in unpaid contributions, finding a per diem rate of $1.78. From the date of the Montelle Declaration, October 30, 2018, to the date of this Report and Recommendation, the total amount of interest accrued is $551.80.

II). Since the amount of the delinquency is $6,514.52,[7] plaintiffs seek an award of $651.45 in liquidated damages. (Id. ¶¶ 12, 14, Ex. N).

Based on a review of the Trust Agreements, the Collection Policy, the Montelle Declaration and exhibits thereto, the Court respectfully recommends that plaintiffs be awarded $278.11 in interest owed on past due contributions, $1,923.15 in interest accumulated on the delinquent contributions owed for the months of March and April 2016, June and July 2016, and October 2017, through the date of this Report and Recommendation, and $651.45 in liquidated damages.

IV. <u>Audit Request</u>

In an effort to determine the scope of damages in this matter, plaintiffs have been attempting to obtain defendant's cooperation in allowing plaintiffs to perform an audit of defendant's books as required by the CBA and ERISA. Although plaintiffs have been pursuing an audit since April of 2019 (Stat. Rpt.[8]), as of the date of this Report and Recommendation, defendant has yet to provide a complete set of payroll records and other crucial documents from which plaintiffs' auditors may complete an audit.

On August 2, 2019, this Court Ordered defendant to show cause by August 9, 2019, as to why this Court should not proceed to review the pending motion for default judgment insofar as it requests an Order directing defendant to submit to an audit of its books and records from December 1, 2014 through the present. Defendant did not respond to this Court's Order. On

---

[7] The total amount of the delinquency is limited to the amount owed in delinquent contributions and does not include the amounts owed in dues check-offs.
[8] Citations to "Stat. Rpt." refer to the Status Report Letter of Adrianna R. Grancio dated July 31, 2019.

11

August 14, 2019, this Court again Ordered defendant to respond, by August 16, 2019, as to why this Court should not proceed to review the pending motion for default judgment insofar as it requests an Order directing defendant to submit to an audit of its books and records from December 1, 2014 through the present. Again, defendant failed to respond to this Court's Order.

Plaintiffs seek an Order requiring defendant to comply with the CBA, the Trust Agreement, and ERISA by submitting to an audit of the defendant's books and records. (Montelle Decl. ¶¶ 8, 11, Ex. J). The CBA provides that defendant must "permit[] an examination of its books and records to ascertain and verify the contributions due . . . ." (Id, Ex. J, Art. IV). Plaintiffs allege that despite their request for Genrus to submit to an audit, defendant has refused. (Id.; Compl. ¶ 38).

Injunctive relief is appropriate under Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641-42 (2d Cir. 1991), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *9 (E.D.N.Y. Sept. 26, 2006) (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Ctrs. Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)).

12

In this case, as in King v. Nelco Industries, Inc., where defendant has defaulted and has further refused to submit to the requested audit, plaintiffs have provided the Court with sufficient evidence "that [defendant] intends to frustrate any judgment . . . or show 'contempt for the judicial process.'" Id. (internal citations omitted). Thus, this Court respectfully recommends that Genrus be ordered to submit to an audit within 30 days.

V. Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the CBA, plaintiffs seek to collect attorney's fees, and costs. (Marimon Decl. ¶ 7). With respect to attorney's fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. 29 U.S.C. § 1132(g)(2)(D). Here, the CBA also establishes that the employer is liable for the benefit plan's legal costs once the employer is in default. (Montelle Decl. ¶ 7, Ex. J). Plaintiffs request an award of $5,821.00 in legal fees and $470.57 in costs. (Marimon Dec. ¶¶ 11, 12, Ex. S).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

13

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if

14

necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[9] 2012 WL 676350, at *5, n.8.

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. at 437. In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers., 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994) (internal quotation marks omitted)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts

---

[9] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located). Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012). In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar claims.

Plaintiffs' counsel from Virginia & Ambinder, LLP ("the Firm") has submitted detailed contemporaneous billing records, as required by New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). (Marimon Decl., Ex. S). The Firm seeks fees for associate attorneys Nicole Marimon, a 2014 law school graduate, and Kelly Malloy, a 2018 law school graduate, at the rate of $250 per hour, and for paralegals at the rate of $80 per hour. (Marimon Decl. ¶¶ 8, 9, 10).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rates charged here are reasonable in light of the rates normally charged in the Eastern District of New York. See, e.g.,

Trustees of Local 522 Pension Fund v. Consolidated Cos., No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (approving rates of $350 for partners and $300 for experienced associates), R&R adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 623 (E.D.N.Y. 2017) (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default action); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Center, No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default), R&R adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017); Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly rate of $330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by associate in ERISA litigation, including summary judgment motion), R&R adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case, but noting that these rates were on the "higher end" for the Eastern District); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

Having determined the rates to be charged in this case, the Court now turns to the reasonableness of the number of hours billed in this matter. See, e.g., LaBarbera v. Empire State

Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should "exclude excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).

Based on the contemporaneous billing records submitted to the Court, the Firm seeks compensation for a total of 25.8 hours of work on this matter from July 20, 2018 through October 31, 2018. (Marimon Decl., Ex. S). The Firm's work on this case included drafting the Complaint and drafting plaintiff's Motion for a Default Judgment and the materials annexed thereto. (Id.) Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $5,821.00 in attorney's fees.

Plaintiffs are also entitled to reimbursement for costs incurred in connection with the collection of delinquent contributions. See ERISA § 502(g), 29 U.S.C. § 1132(g); Trustees of Empire State Carpenters Annuity v. J&B Paint & Contr., LLC, No. 13 CV 35, 2013 U.S. Dist. LEXIS 126337, at *7 (E.D.N.Y. June 12, 2013). Included in these costs are filing fees and other court expenses under 29 U.S.C. § 1132(g)(2)(D) and under the terms of the CBA. See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. Sept. 2, 2009) (awarding $818.53 in costs for filing fees, service, postage, and photocopying). Here, plaintiffs seek a total award of

costs of $470.57, including mail, Courtlink fees, service fees, and court fees. The Court respectfully recommends that plaintiffs be awarded $470.57 in costs.

## CONCLUSION

The Court respectfully recommends that: 1) plaintiffs be awarded $9,707.71, consisting of $6,855 in unpaid contributions and union dues, $278.11 in interest owed on past due contributions, $1,923.15 in interest accumulated on the delinquent contributions owed through the date of this Report and Recommendation, and $651.45 in liquidated damages; and 2) an additional $6,291.57 in attorneys' fees and costs. It is further recommended that defendant be Ordered to submit to an audit of its books and records for the period of December 1, 2014 through the present.

Thus, the Court recommends that plaintiffs be awarded **$15,999.28** in total.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 6, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York